**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| REUNION INDUSTRIES, INC., | ) CIVIL ACTION NO. 07-1337 |
| | ) |
| Plaintiff, | ) Honorable Francis X. Caiazza |
| | ) |
| v. | ) |
| | ) |
| STEEL PARTNERS II, STEEL PARTNERS | ) |
| LLC; WEBFINANCIAL CORPORATION and | ) |
| LC CAPITAL MASTER FUND, LTD., | ) |
| | ) |
| Defendants. | ) |
| | ) |

**AMENDED COMPLAINT**

Plaintiff, Reunion Industries, Inc., by and through its attorneys, Del Sole Cavanaugh

Stroyd LLC, files the following Amended Complaint and in support thereof, states as follows:

**PARTIES**

1.      Plaintiff, Reunion Industries Inc. (**"Reunion"** or the **"Company"**), is a publicly-

traded Delaware company with its principal executive offices located at 11 Stanwix Street, Suite

1400, Pittsburgh, Pennsylvania 15222.

2.      Reunion owns and operates industrial manufacturing operations that design and

manufacture engineered, high-quality products for specific customer requirements, such as large-

diameter seamless pressure vessels, hydraulic and pneumatic cylinders and grating.

3.      Defendant, LC Capital Master Fund, Ltd. (**"LC Master Fund"**) is a foreign

corporation organized under the laws of the Caymen Islands with its principal place of business

located at 680 Fifth Avenue, Suite 1202, New York, NY 10019.

4.      Defendant, Steel Partners II, LP (**"Steel Partners"**), is a Delaware partnership

with its principal place of business located at 590 Madison Avenue, 32nd Floor, New York, NY

10022.

5.      Defendant, Steel Partners LLC (**"Partners LLC"**), is a Delaware company with its principal place of business located at 590 Madison Avenue, 32nd Floor, New York, NY 10022.  Partners LLC is the general partner of Steel Partners.

6.      Defendant, WebFinancial Corporation (**"Web"**) is a Delaware corporation with its principal place of business located at 590 Madison Avenue, 32nd Floor, New York, NY 10022.

7.      Defendants, LC Master Fund and Steel Partners are private investment funds, commonly referred to as hedge funds.

8.      Defendant Web is a holding company that is controlled by Steel Partners by virtue of Steel Partners' ownership of 75% of the outstanding capital stock of Web.

9.      The principle business of Defendant, Partners LLC, is to act as the general partner of Steel Partners.  At all times relevant to the allegations of this Complaint, Steel Partners was acting under the direction of its general partner, Partners LLC.  For purposes of this Complaint, Defendants Steel Partners, Web and Partners LLC will be referred to collectively as the **"Steel Parties"**.

10.     Unbeknown to Reunion, at all times relevant to the allegations set forth herein, LC Master Fund and the Steel Parties were conspiring in transactions involving investments in Reunion, as set forth in more detail herein, with the unstated intent of acquiring ownership and control of the Company to the detriment of existing shareholders.

## FACTUAL BACKGROUND

### The Loan Transactions

11.     In 2003, Reunion and Defendant, LC Master Fund, began discussing the concept of Reunion's desire to globally restructure its debt.  To that end, over the course of two years,

Reunion and LC Master Fund developed a borrower/lender relationship through which LC Master Fund made loans to Reunion under certain understood terms.

12.     On four separate occasions, LC Master Fund advanced Reunion funds at an agreed upon rate, and with Reunion issuing warrants to purchase consistent amounts of Reunion common stock based upon the amount of the loan.  Throughout the course of Reunion's and LC Master Fund's relationship, they maintained the same general terms of the loan transactions between them.

13.     Specifically, on August 11, 2003, Reunion issued a Senior Subordinated Secured Promissory Note in favor of LC Master Fund in the amount of Two-Million Five Hundred Thousand Dollars ($2,500,000) with interest at ten percent (10%) per annum from the date of the note.

14.     In connection with the August 11, 2003 transaction, Reunion also issued a warrant to LC Master Fund to purchase Six Hundred Twenty-Five Thousand (625,000) shares of the Company's common stock at $0.01 par value per share.

15.      On December 3, 2003, LC Master Fund loaned Reunion an additional One-Million Dollars ($1,000,000).  The parties entered into an Amended and Restated Senior Subordinated Secured Promissory Note (the **"Promissory Note"**) to reflect that the December 3, 2003 loan was under the same terms as the original August 11, 2003 loan.  The total indebtedness under the Promissory Note was increased to Three-Million Five-Hundred Thousand Dollars ($3,500,000).

16.     Consistent with the overall understanding between Reunion and LC Master Fund, as part of the December 3, 2003 transaction Reunion issued another warrant to LC Master Fund

to purchase additional shares of the Company's common stock under the same terms as the August 11, 2003 transaction.

17.     Reunion and LC Master Fund contemplated and discussed future loans under the same terms as the previous transactions.

18.     In May 2004, LC Master Fund acquired a junior participation interest in Reunion's senior revolving credit facility so as to loan an additional Three-Million Dollars ($3,000,000) to Reunion.  In connection with such loan, Reunion issued another warrant for the purchase of shares under the same terms as previously extended.

19.     In July 2005, LC Master Fund increased its junior participation interest in Reunion's senior credit facility and advanced Reunion an additional Three-Million One Hundred Thousand Dollars ($3,100,000).  This loan brought LC Master Fund's total junior participation interest in the senior credit facility to Six-Million One Hundred Thousand Dollars ($6,100,000). In connection with the July 2005 loan, Reunion issued another warrant for the purchase of shares under the same terms as previously extended.

20.     At the times of each of its acquisitions in the senior loan facility, LC Master Fund sold a fifty percent (50%) share of its interest to the Steel Parties, and the related warrants were issued ½ to LC Master Fund and ½ to the Steel Parties.  Accordingly, as a result of the May 2004 and the July 2005 transactions, the Steel Parties acquired an aggregate Three-Million Fifty Thousand Dollars ($3,050,000) junior participation interest in the Company's senior credit facility and received fifty percent (50%) of the warrants issued by Reunion in connection with the junior participation loans.

21.     Although Reunion was lead to believe that the terms of the Steel Parties' investment would be consistent with the understanding between Reunion and LC Master Fund,

the Steel Parties and LC Master Fund began secretly plotting to utilize their debt holdings to gain

ownership and control of the Company to the detriment of the existing shareholders.

### The Senior Notes Transactions

22.      A significant amount of Reunion's debt is held in the form of certain 13% Senior

Notes (the **"Senior Notes"**) which are secured, in part, by a pledge of over 25% of the

Company's common stock (the **"Pledged Shares"**).  Reunion hoped to restructure its debt

through purchasing the Senior Notes at a discount when the Company would be in a position to

do so.

23.      In the fall of 2003, Reunion put LC Master Fund in touch with the holder of

certain Senior Notes which resulted in LC Master Fund purchasing the Senior Notes at a

substantial discount.  The understanding between Reunion and LC Master Fund was that LC

Master Fund would cooperate in Reunion's debt restructuring plan with respect to the Senior

Notes.

24.      In the spring and summer of 2005, based upon the understanding between

Reunion and LC Master Fund, Reunion again placed LC Master Fund in touch with holders of

Senior Notes which resulted in LC Master Fund purchasing additional Senior Notes at a

substantial discount.

25.      As a result of its purchases of Senior Notes, LC Master Fund owned the majority

interest in the outstanding Senior Notes issued by Reunion.  Specifically, LC Master Fund owned

approximately seventy-two percent (72%) of the total outstanding Senior Notes.

26.      Reunion placed LC Master Fund in contact with the Senior Note holders based

upon the understanding that LC Master Fund would hold the Senior Notes until such time, if any,

that Reunion was in a position to redeem all Senior Notes or restructure all Senior Notes into a

term loan facility under comparable terms as the prior transactions with LC Master Fund.  Either

of these processes would be streamlined by consolidating the holders of the Senior Notes thereby

reducing the number of holders with which the Company would have to consult on the

restructuring of the debt.

**Defendants' Conspiracy to Acquire Reunion**

27.     Unbeknown to Reunion, rather than dealing in good faith, the Steel Parties and

LC Master Fund have been engaged in a concealed and concerted effort to take control of the

Company.

28.     Beginning in or about January 2006, the Steel Parties contacted LC Master Fund

to discuss taking over control of Reunion.  At that time, the Steel Parties raised the concept of

purchasing a part of LC Master Fund's Senior Note holdings and suggested to LC Master Fund

that the holder of a majority of the Senior Notes could claim the Company to be insolvent.  The

Steel Parties' scheme was and is to force the Company into Bankruptcy and convert all or a

portion of the Senior Notes into a 100% equity interest in the Company.  The Steel Parties'

scheme would result in eliminating the equity interests of the Company's existing stockholders

solely for the benefit of LC Master Fund and the Steel Parties.

29.     Upon becoming aware of the Steel Parties' scheme to utilize debt holdings to gain

ownership and control of the Company to the detriment of the existing shareholders, Reunion

expressed to LC Master Fund that Reunion did not want to have any dealings with the Steel

Parties, nor should the Steel Parties be involved in any transactions involving Reunion's debt.

30.     While LC Master Fund was ostensibly cooperating with Reunion and leading

Reunion to believe that they would not participate in the Steel Parties' plot, LC Master Fund

actually had no intention to go forward with the original understanding that Reunion would

6

redeem the Senior Notes or restructure on terms comparable to the prior transactions.  Rather, LC Master Fund was conspiring with the Steel Parties to acquire control and ownership of the Company, solely for their own financial benefit.

31.     The Steel Parties and LC Master Fund began to act covertly to purchase and trade the Company's debt securities.  In August 2006, LC Master Fund secretly entered into an agreement with the Steel Parties wherein the Steel Parties acquired one half of LC Master Fund's seventy-two percent (72%) interest in the Senior Notes.

32.     Unaware that LC Master Fund and the Steel Parties were covertly dealing in its debt securities, in the fall of 2006, Reunion made a tender offer to repurchase all outstanding Senior Notes.  Reunion's offer represented an approximate thirty percent (30%) increase in value over the amount paid by LC Master Fund, along with the issuance of warrants in amounts consistent with Reunion's prior loan transactions with LC Master Fund.

33.     Based upon the prior course of dealing, Reunion was lead to believe that LC Master Fund would agree to the tender offer or would agree to restructure the debt by converting the Senior Notes to a promissory note with warrants under the same terms as the previous loan transactions.  Reunion was unaware of the Steel Parties' ownership of Senior Notes and, in fact, had stated to LC Master Fund that the Steel Parties were not to be involved in any debt holdings because of their expressed intent to take control of the Company to the detriment of existing shareholders.

34.     Over 80% of the holders of Senior Notes other than the Steel Parties and LC Master Fund tendered their Senior Notes in response to Reunion's tender offer.  However, despite the considerable return that they would have obtained, the Steel Parties and LC Master Fund inexplicably refused to tender their Senior Notes.  Accordingly, because of the refusal of

the Steel Parties and LC Master Fund to tender their Senior Notes, Reunion was forced to withdraw the tender.

35.     In fact, the Steel Parties and LC Master Fund blocked the redemption of the Senior Notes so as to implement their scheme to acquire control of the Company through converting the Senior Notes to equity to the exclusion of current shareholders.

36.     Indeed, the owners and/or principals of the Steel Parties have admitted to Reunion's senior management that because of defaults under the Senior Notes, they intend to try to force the Company to convert the Senior Notes into 100% of the equity in the Company, thereby eliminating the interests of the Company's current equity holders and resulting in the Defendants acquiring ownership of the Company.

37.     The owners and/or principals of the Steel Parties and LC Master Fund originally asked Reunion's senior management to cooperate in their scheme and suggested that they would work out an arrangement to give senior management an equity interest in the restructured Company on favorable terms not available to other existing equity holders.  However, Reunion's management would not participate in a plot that would result in the current shareholders loosing all value in their shares.

**The Intercreditor Agreement**

38.     Under an intercreditor agreement among Reunion's secured lenders, until the senior secured debt is paid in full, LC Master Fund and the Steel Parties were prohibited from taking action for a minimum of 180 days to collect on their loans, including the Senior Notes and the Promissory Note, which are junior in priority to Reunion's indebtedness to its other lenders. Accordingly, the terms of the intercreditor agreement frustrates the Steel Parties' and LC Master Fund's scheme to convert the Senior Notes to equity and eliminate the Company's current equity

holders.  Therefore, when the attempts to manipulate Reunion's management proved unsuccessful, the owners and/or principals of the Steel Parties and LC Master Fund initiated a campaign to influence Reunion's senior lender to either assist in their plot to equitize the Senior Notes by accelerating the debt, or for the senior lender to sell its interest in the senior credit facility to the Steel Parties and/or LC Master Fund so that they could accelerate the debt.

39.     Reunion's senior lender has not as of yet acquiesced to the Steel Parties' repeated overtures to accelerate the debt or sell its interest in the senior credit facility so as to allow the Steel Parties and/or LC Master Fund to take over the Company.  Reunion's senior lender has advised the Steel Parties and/or LC Master Fund that the senior credit facility is sufficiently collateralized and Reunion is performing under that facility and, as such, the senior lender has no reason to take such action.

40.     Nevertheless, the owners and/or principals of the Steel Parties have made it clear that they have no desire to be repaid on the debt, but simply want to acquire ownership and control of Reunion for its breakup value, which exceeds their debt holdings, to the detriment of existing shareholders.

**The Steel Parties buyout of LC Master Fund**

41.     Pursuant to a December 18, 2006 letter agreement, the Steel Parties purchased all of the Company's indebtedness that was owned by LC Master Fund.  Accordingly, the Steel Parties now own the Three-Million Five Hundred Thousand Dollars ($3,500,000) owed under the Promissory Note, the entire Six-Million One Hundred Thousand Dollars ($6,100,000) junior participation interest in the senior credit facility, as well as approximately 72% of the total outstanding Senior Notes.

42.     Additionally, on that same date, it is believed and therefore averred that the Steel Parties orchestrated the purchase of LC Master Fund's equity holdings by a third-party who is acting in concert with the Steel Parties.  Specifically, on December 18, 2006, Jack E. Golsen purchased LC Master Fund's equity holdings, which constitute approximately 11.02% of the total shares outstanding.

**The Steel Parties' Coercive Tactics**

43.     The Company has historically not been current on certain interest payments under the Senior Notes.  Additionally, the principal payment on the Promissory Note that was due on or about December 6, 2007 has not been paid.  However, the Company has been and is current on all interest payments under the Promissory Note.  These issues were well-known to the Steel Parties and to LC Master Fund at the time they acquired their respective interests in the Senior Notes and the Promissory Note.  Nevertheless, in a continuing effort to effectuate their takeover plot, the Steel Parties are currently attempting to exploit the long-standing default under the Senior Notes, and the more recent default under the Promissory Note, as a means to seize control of the Company.

44.     The default on the Promissory Note existed at the time the Steel Parties acquired the note on December 18, 2006.  Even though the Steel Parties knew of the default when they acquired the Promissory Note and admit that Reunion has never been delinquent on interest payments under the Promissory Note,  on February 1, 2007, the Steel Parties placed Reunion on notice of a default under the Promissory Note and demanded immediate payment of all principal and interest owed.

45.     On February 6, 2007, the Company notified the Steel Parties that it would repurchase the Promissory Note in full and pay off the Steel Parties' junior participation interest

in the Company's senior credit facility, thereby curing any alleged default and retiring Nine-Million Six-Hundred Thousand ($9,600,000.00) of indebtedness to the Steel Parties.  The Steel Parties have never responded to Reunion's notice.

46.     The Steel Parties have not responded to Reunion's February 7, 2007 offer because they desire to keep and use their debt holdings as a way to acquire ownership of the Company. The Steel Parties' plan is to obtain a windfall by liquidating the Company's assets which far exceed their debt holdings.

47.      The latest example of the Steel Parties' tactics of financial extortion is reflected in their actions in attempting to block Reunion's sale of one of its operating divisions. Specifically, in July and August, 2007, Reunion negotiated for the sale of its CP Industries division ("CPI") to Pressure Technologies, ("PT"), a U.K. company, for $64 million plus the assumption of certain operating liabilities.

48.     The purchase price for CPI was more than enough to enable Reunion to pay **all** of its secured lenders, including the Steel Parties, in full.

49.     Reunion and PT, having reached agreement on all issues, were prepared to sign an Asset Purchase Agreement on or about August 16, 2007.  PT's only condition to signing was that Reunion's lenders sign Standstill or Forbearance Agreements, under which they would agree not to exercise their remedies against Reunion, with certain limited exceptions, until October 15, 2007 in order to give the parties a chance to complete the transaction.

50.     Reunion reached agreement on the terms of the standstills with its senior lenders, however, the Steel Parties refused to execute a standstill unless Reunion acquiesced to its commercially unreasonable terms, which included a full release from any and all claims and a $250,000.00 fee.

11

51.     Reunion agreed to pay the outrageous fee demanded by the Steel Parties but because of Reunion's claims against the Steel Parties, it could not agree to a release.

52.     As a compromise, Reunion agreed to release the Steel Parties effective on the closing of the sale of CPI to PT and to forbear from asserting any claims against the Steel Parties for so long as the Steel Parties refrained from exercising its rights and remedies against Reunion. The Steel Parties inexplicably rejected this compromise.

53.     As a result of the Steel Parties' completely unreasonable conduct, PT withdrew from the CPI transaction. Thus, the Steel Parties' actions prevented completion of a transaction that would have resulted in full payment of Reunion's indebtedness.

54.     No material events have occurred that would cause the Steel Parties to reasonably believe that payment under either the Promissory Note or the Senior Notes is in jeopardy.  The financial position of the Company has improved over past performance and the Company is current on the senior credit facility, which includes the Steel Parties' Six-Million One Hundred Thousand Dollars ($6,100,000) junior participation interest.  Reunion has offered to buy out both the Promissory Note and the Steel Parties' junior participation interest.  Reunion also made a tender offer that would yield a 30% return to the Steel Parties on their investment in the Senior Notes.

55.     If the Steel Parties were truly concerned about repayment on the loans, they would have acted on Reunion's tender offer and the notice to retire the indebtedness under the Promissory Note and the junior participation interest, but they did not.  Thus, the Steel Parties' acts in pressing defaults at this time can only be viewed as an attempt to financially strong-arm the Company to acquiesce to their unreasonable demands.

56.     In addition to the action taken under the Promissory Note, on February 2, 2007, the Steel Parties, as the holder of a majority in principal amount of the Senior Notes, have caused U.S. Bank National Association (**"US Bank"**), which acts as Indenture Trustee for the holders of the Senior Notes, to declare all principal and interest on the Senior Notes to be immediately due and payable.  The holders of the Senior Notes have never previously advised the Company that the long-standing delinquency in certain interest payments is so critical as to cause a "realization event" that would trigger purported rights of the Indenture Trustee.  Upon the direction of the Steel Parties, US Bank has further asserted the right under the governing pledge agreement to vote the Pledged Shares, which constitute over 25% of the Company's common stock, and suspend the dividend and voting rights of the pledgor with respect to such Pledged Shares.

57.     The delinquency in interest payments has existed for some time and was previously acquiesced in by LC Master Fund and the Steel Parties.  Neither had viewed the situation as a critical event or cause for alarm.  Moreover, given the improved financial performance of the Company, the tender offer by Reunion and the fact that the equity in the fair market value of the Company's assets exceeds its debt obligations, there is no reasonable basis for the declaration of a default under the Promissory Note or Senior Notes at this time.  It was only upon Reunion's refusal to participate in the Steel Parties' scheme to convert the Senior Notes to equity and entirely eliminate the interests of the Company's current equity holders that the Steel Parties decided to implement the scheme to take action on the defaults.  The timing of this action has been orchestrated by the Steel Parties for the sole purpose of attempting to place the Company in financial duress so as to compel capitulation to their commercially unreasonable demands.

## The SEC Filings

58.     Further evidence of the Defendants' covert attempt to take control of the Company is found in their SEC filings.  Reunion is a publicly-traded company that is subject to the reporting requirements of the Securities and Exchange Act of 1934 (the **"Act"**), and whose common stock is registered pursuant to the Act.

59.     Section 13(d) of the Act, 15 U.S.C.A. §78m(d), and the regulations promulgated thereunder by the Securities and Exchange Commission (**"SEC"**), require *inter alia* that any person who directly or beneficially owns 5% or more of a class of equity securities registered under the Act, is required to report such ownership on a Schedule 13D, as well as report any material changes to such ownership and if such person has an intent to acquire control of the Company issuing such registered securities.

60.     On October 26, 2007, the Steel Parties and LC Master Fund, among other connected and related entities, filed a Schedule 13D with the SEC pursuant to §13(d) of the Act.

61.     Ostensibly, the purpose of the 13D filing was to report a change in LC Master Fund's investment "intent" in Reunion, as well as to report the formation of a group consisting of numerous related and intertwined entities, including LC Master Fund, the Steel Parties, their principals and affiliates, that owned in excess of 5% of the shares of the Company.

62.     The October 13D filing revealed for the first time that the Steel Parties and LC Master Fund had acted jointly prior to the filing to purchase the Company's debt securities and would continue to do so.

63.     The October 13D filing was the first disclosure of the August 2006 transaction wherein the Steel Parties purchased ½ of LC Master Fund's Senior Note holdings.

64.     On December 19, 2006, the Defendants filed an amendment to the October 13D filing.  The December 19 amendment states that the group identified in the original 13D filing has been disbanded and that the Steel Parties and LC Master Fund have purportedly terminated their concealed arrangement to act jointly to purchase the Company's debt securities.  The amended filing refers to a December 18, 2006 "letter agreement" among the Steel Parties and LC Master Fund under which the Steel Parties purchased all of the debt owned by LC Master Fund in Reunion.

65.     The December amendment to the October 13D filing does not disclose LC Master Fund's sale of its equity holdings to Jack E. Golsen, nor does it disclose that Mr. Golsen and the Steel Parties acted cooperatively in the acquisition of the equity interest.

66.     The December amendment to the October 13D filing wrongly asserts that, despite the undeniable ownership, control and affiliation among and between the Defendants, they are no longer a group and that the Steel Parties do not own, beneficially or otherwise, 5% or more of the Company's shares.  As such, the Steel Parties disclaim any obligation to comply with future filing requirements under the Act.

67.     The December amendment to the October 13D filing fails to disclose that despite the affiliation between the Steel Parties and Mr. Golsen, they are acting cooperatively and, as such, the Steel Parties own, beneficially or otherwise, 5% or more of the Company's shares.

68.     In addition to the above, neither the October 13D filing nor the December amendment discloses the Steel Parties' assertion that the default under the Senior Notes allows them, as the holder of a majority in principal amount of the Senior Notes, to effectively vote and control the disposition of the Pledged Shares, which would constitute a beneficial ownership interest in the Pledged Shares and would make the Steel Parties, for purposes of Section 13(d) of

15

the Act and the regulations promulgated thereunder, the beneficial owners of more than 25% of the common stock of Reunion.

69.     Both, the October 13D filing and the December amendment, fail to state the undeniable intent of the Defendants to take control of the Company by converting their Senior Notes into a 100% equity interest in the Company, thereby wiping out the equity interests of the Company's existing stockholders for their own benefit.

70.     It is believed that prior to the October 13D filing and continuing thereafter, various agreements, formal and informal, entered into by and between the Defendants, their principals and affiliates, created a group which acted and continues to act cooperatively for the purpose of acquiring, holding or voting the Company's stock and controlling its debt securities. The purpose of this group has been and is to take over the Company for its own benefit and to the detriment of the existing equity holders.

71.     On October 10, 2006, LC Master Fund, together with certain of its affiliates, filed a Form 3 with the SEC (the **"LC Form 3"**) with respect to their beneficial ownership of the Company's common stock.  The LC Form 3 did not include the Steel Parties as being part of a group with LC Master Fund and its affiliates, even though only 16 days later LC Master Fund, its affiliates and the Steel Parties filed their 13D with the SEC reporting that such parties were, in fact, acting as a group with respect to their ownership of Reunion's common stock.

72.     LC Master Fund has never filed a Form 4 with the SEC reporting its group relationship with the Steel Parties or with Mr. Golsen.

73.     On November 3, 2006, the Steel Parties filed a Form 3 with the SEC (the **"Steel Form 3"**) with respect to their beneficial ownership of the Company's common stock.  The Steel Form 3 did not include LC Master Fund or LC Master Fund's affiliates as being part of a group

with the Steel Parties, even though only eight days earlier LC Master Fund, its affiliates and the Steel Parties, had filed a joint Schedule 13D with the SEC reporting that they were, in fact, acting as a group with respect to their ownership of the Company's common stock.

74.     The Steel Parties never filed a Form 4 with the SEC reporting its group relationship with LC Master Fund and its affiliates, or with Mr. Golsen.

75.     The Steel Parties' assertion, set forth in a letter dated February 2, 2007 from US Bank to the Company, of their right to vote or direct the voting of the Pledged Shares (which constitute more than 25% of the Company's outstanding shares) would, if correct, make the Steel Parties the beneficial owners of such shares for purposes of Section 16(a) of the Act and the regulations promulgated thereunder and require them to file a Form 4 reporting such ownership with the SEC.

76.     In response to the claims originally asserted in this action, on October 2, 2007, the Steel Parties and Warren G. Lichtenstein jointly filed a Form 3 with the SEC, which provided that:

    a.     each of them may deemed to be beneficial owners of the Company's stock;

    b.     each of them are member of a Section 13(d) group that could be deemed to own more than 10% of the Company's outstanding common stock; and

    c.     that WebFinancial could be deemed to indirectly, beneficially own shares of common stock in the Company that are subject to certain Securities Pledge Agreement dated as of May 1, 1993 by and among the pledgors thereunder and U.S. Bank National Association, as successor trustee.

77.     On October 2, 2007, the Steel Parties and Warren G. Lichtenstein also jointly filed a Schedule 13D with the SEC pursuant to §13(d) of the Act, which disclosed that each of them may be deemed beneficial owners of the Company stock because of their assertion that the

default under the Senior Notes allows them, as the holder of a majority in principal amount of the

Senior Notes, to effectively vote and control the disposition of the Pledged Shares.

78.     The Steel Parties and Warren G. Lichtenstein only filed the October 2, 2007 Form

3 and Schedule 13D because the Company filed this action in the Court of Common Pleas of

Allegheny County on September 21, 2007 alleging disclosure violations of Sections 13(d) and

16(a) of the Act.

## COUNT I

### Fraud in the Inducement

79.     The allegations of paragraphs 1-78 of the Complaint are incorporated herein by

reference as though set forth fully and completely.

80.     LC Master Fund, individually and/or through its employees, other agents and

representatives, knowingly and willfully made fraudulent and material misrepresentations to the

Plaintiff and omitted to state material facts with the intent to induce the Plaintiff to rely thereon

to their detriment, including, but not limited to, as more fully set forth herein.  In connection with

the loan transactions, LC Master Fund made the following express and/or implied

misrepresentations:

      a.      That they would treat all of the loan transactions consistent with
Reunion's stated debt restructuring objectives;

      b.      That LC Master Fund would hold the Senior Notes until such time that
Reunion was in a position to redeem all Senior Notes or restructure all
Senior Notes into a term loan facility with Reunion under comparable
terms as the prior loan transactions;

      c.      By failing to disclose that the Steel Parties and LC Master Fund had acted
jointly prior to the October 13D filing to purchase the Company's debt
securities and would continue to do so;

      d.      By failing to disclose that the Steel Parties and LC Master Fund were
working covertly and cooperatively in a scheme to convert the Senior

Notes into a 100% equity interest in the Company, thereby wiping out the equity interests of the Company's existing stockholders for their own benefit;

e.    By failing to disclose that, while ostensibly cooperating with Reunion and leading Reunion to believe that LC Master Fund would not participate in the Steel Parties' plot, LC Master Fund actually had no intention to go forward with the original understanding that Reunion would redeem or restructure the Senior Notes at a future date on terms consistent with the prior transactions;

f.    While knowing the intent to acquire control of the Company, failing to disclose that in August 2006, LC Master Fund secretly entered into an agreement with the Steel Parties wherein the Steel Parties acquired one half of LC Master Fund's seventy-two percent (72%) interest in the Senior Notes, and;

g.    By failing to disclose their intention of selling all of their debt holdings to the Steel Parties under the December 18, 2006 "letter agreement", and the Steel Parties' intent to acquire control of the Company.

81.    The above-stated misrepresentations and omissions were false when made and were made with the intent that Reunion would rely upon said misrepresentations and omissions.

82.    Reunion justifiably relied upon the misrepresentations and omissions set forth in this Complaint to its detriment by:

a.    Entering into loan transactions with the Defendants;

b.    Encouraging LC Master Fund, which it understood to be a cooperative lender, to acquire a junior participation interest in the Company's senior credit facility;

c.    Issuing warrants to facilitate the loan transactions;

d.    Placing LC Master Fund in contact with holders of Senior Notes so as to consolidate ownership of the Senior Notes, this resulted in LC Master Fund purchasing 72% of the Senior Notes at a discount.

83.    As a result of the misrepresentations and omissions of LC Master Fund as set forth throughout this Complaint, Reunion has suffered and will continue to suffer substantial monetary damages including, but not limited to, loss of shareholder value, a loss of savings on

debt restructuring, loss of business opportunity and a loss of value in assets that are currently

subject to sale in a distressed situation as a result of LC Master Fund's tortious conduct.

Reunion estimates its damages resulting from Defendant's wrongful conduct to exceed

$70,000,000.

84.     LC Master Fund's conduct as stated herein was outrageous, wanton, malicious

and oppressive, constitutes a gross breach of trust and blatant disregard of their duties to the

Plaintiff, and is sufficient to support the award of punitive damages under Pennsylvania law.

WHEREFORE, Plaintiff respectfully requests that a judgment for money damages be

entered in its favor and against LC Master Fund, along with pre-judgment and post-judgment

interest, all costs incurred in pursuit of this action, as well as any and all further relief this Court

deems just and equitable.

## COUNT II

### Fraud in the Administration of the Loans

85.     The allegations of paragraphs 1-84 of the Complaint are incorporated herein by

reference as though set forth fully and completely.

86.     LC Master Fund and the Steel Parties, individually and/or through their

employees, other agents and representatives, knowingly and willfully made fraudulent and

material misrepresentations to the Plaintiff and omitted to state material facts with the intent to

induce the Plaintiff to rely thereon to their detriment, including, but not limited to, as more fully

set forth herein.  In connection with the administration of the loans, LC Master Fund and the

Steel Parties made the following express and/or implied misrepresentations and/or material

omissions:

            a.      That they would treat the loan transactions consistent with Reunion's
                    stated debt restructuring objectives;

20

b.      By making loans to the Company with the hidden agenda of creating a situation  under which they could use their debt holdings to improperly take ownership and control of the Company;

c.      That they publicly supported and would cooperate with Reunion's debt restructure goals, while privately plotting to utilize their debt holdings to take ownership and control of the Company;

d.      By refusing to accept and thereby blocking the Company's tender offer for the Senior Notes that was consistent with the prior course of dealings among the parties;

e.      By claiming a default under the Promissory Note and the Senior Notes on previously accepted conditions;

f.      By attempting to financially squeeze the Company through taking improper steps to collect on the junior loans, such as accelerating the debt, attempting to influence the senior secured lender to assist in their scheme or to sell its senior interest so that they could go forward, and causing the Indenture Trustee to declare a default under the Senior Notes, and;

g.      By administering their debt holdings so as to effectuate their covert scheme to convert the Senior Notes into a 100% equity interest in the Company, thereby wiping out the equity interests of the Company's existing stockholders for their own benefit.

87.     The above-stated misrepresentations and omissions were false when made and were made with the intent that Reunion would rely upon said misrepresentations and omissions.

88.     Reunion justifiably relied to their detriment, and to the Defendants' benefit, on Defendants' material misrepresentations and omissions, and that reliance was a substantial factor in bringing about the harm suffered by the Plaintiff, as set forth more fully herein.

89.     As a result of the misrepresentations and omissions of LC Master Fund and the Steel Parties as set forth throughout this Complaint, Reunion has suffered and will continue to suffer substantial monetary damages including, but not limited to, loss of shareholder value, a loss of savings on debt restructuring, loss of business opportunity and a loss of value in assets that are currently subject to sale in a distressed situation as a result of the Defendants' tortious

conduct.  Reunion estimates its damages resulting from Defendant's wrongful conduct to exceed $70,000,000.

90.     The Defendants' conduct as stated herein was outrageous, wanton, malicious and oppressive, constitutes a gross breach of trust and blatant disregard of their duties to the Plaintiff, and is sufficient to support the award of punitive damages under Pennsylvania law.

WHEREFORE, Plaintiff respectfully requests that a judgment for money damages be entered in its favor and against LC Master Fund and the Steel Parties, along with pre-judgment and post-judgment interest, all costs incurred in pursuit of this action, as well as any and all further relief this Court deems just and equitable.

## COUNT III

### Breach of Fiduciary Duty

91.     The allegations of paragraphs 1-90 of the Complaint are incorporated herein by reference as though set forth fully and completely.

92.     Despite the understood borrowing intent of Reunion and the course of dealing between Reunion and LC Master Fund and the Steel Parties as affiliates or successors in interest to LC Master Fund, the Defendants have arbitrarily and unreasonably breached and refused to honor the established borrower/lender relationship.  Instead, the defendants have attempted to surreptitiously acquire control of the Company.

93.     LC Master Fund and the Steel Parties have acted in an unjustified, bad faith and commercially unreasonable manner in failing to continue with the understood and established course of dealing with Reunion; investing in the Company with the hidden intent of exploiting a previously accepted situation of default so as to acquire control of the Company; failing to disclose their prior relationships and dealings, attempting to influence Reunion's management

and senior lenders to go along with their scheme, falsely representing that they would convert their Senior Note holdings to term notes under the established course of dealing with Reunion and blocking the sale of CPI.

94.     The actions of the Defendants as set forth herein constitute breaches of their fiduciary duties to the Plaintiff.

95.      As a result of the Defendants' breach of fiduciary duty, as set forth throughout this Complaint, Reunion has suffered and will continue to suffer substantial monetary damages including, but not limited to, loss of shareholder value, a loss of savings on debt restructuring, loss of business opportunity, and a loss of value in assets that are currently subject to sale in a distressed situation as a result of the Defendants' tortious conduct.  Reunion estimates its damages resulting from Defendants wrongful conduct to exceed $70,000,000.

WHEREFORE, Plaintiff respectfully requests that a judgment for money damages be entered in its favor and against the Defendants, along with pre-judgment and post-judgment interest, all costs incurred in pursuit of this action, as well as any and all further relief this Court deems just and equitable.

## COUNT IV

### Breach of Implied Duty of Good Faith and Fair dealing

96.     The allegations of paragraphs 1-95 of the Complaint are incorporated herein by reference as though set forth fully and completely.

97.     Despite the understood borrowing intent of Reunion and the course of dealing between Reunion and LC Master Fund and its affiliates or successors in interest, the Steel Parties, the Defendants have arbitrarily and unreasonably breached and refused to honor the

established borrower/lender relationship.  Instead, the defendants have attempted to surreptitiously acquire control of the Company.

98.     LC Master Fund and the Steel Parties have acted in an unjustified, bad faith and commercially unreasonable manner in failing to continue with the understood and established course of dealing with Reunion; investing in the Company with the hidden intent of exploiting a previously accepted situation of default so as to acquire control of the Company; failing to disclose their prior relationships and dealings, attempting to influence Reunion's management and senior lenders to go along with their scheme, falsely representing that they would convert their Senior Note holdings to term notes under the established course of dealing with Reunion and blocking the sale of CPI.

99.     As a result of the Defendants' bad faith and commercially unreasonable conduct as set forth throughout this Complaint, Reunion has suffered and will continue to suffer substantial monetary damages including, but not limited to, loss of shareholder value, a loss of savings on debt restructuring, loss of business opportunity, and a loss of value in assets that are currently subject to sale in a distressed situation as a result of the Defendants' tortious conduct. Reunion estimates its damages resulting from Defendants wrongful conduct to exceed $70,000,000.

WHEREFORE, Plaintiff respectfully requests that a judgment for money damages be entered in its favor and against the Defendants, along with pre-judgment and post-judgment interest, all costs incurred in pursuit of this action, as well as any and all further relief this Court deems just and equitable.

**DEL SOLE CAVANAUGH STROYD LLC**

By /s/ Stephen J. Del Sole
        Stephen J. Del Sole
        PA ID No. 73460
        Arthur H. Stroyd
        PA ID No. 15910

        The Waterfront Building
        200 First Avenue, Suite 300
        Pittsburgh, PA 15222
        Tel: (412) 261-2393
        Fax: (412) 261-2110

        **Attorneys for Plaintiff, Reunion
        Industries, Inc.**

Dated: October 23, 2007

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 23rd day of October, 2007, a true and correct copy of the foregoing ***Amended Complaint*** was served via First Class, U.S. Mail, postage prepaid on the following:

>Ronald L. Hicks, Esquire
>Stacey M. Noble, Esquire
>Meyer Unkovic & Scott LLP
>1300 Oliver Building
>535 Smithfield Street
>Pittsburgh, PA 15222
>
>LC Capital master Fund, ltd.
>680 Fifth Avenue
>Suite 1202
>New York, New York 10019

By  /s/ Stephen J. Del Sole